UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CYNTHIA MCDONALD,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-860

Weber, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

    Plaintiff Cynthia McDonald filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

    **I. Summary of Administrative Record**

    On October 24, 2006, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging a disability onset date of October 1, 2006, due to cervical disc disease, irritable bowel syndrome, carpal tunnel syndrome, thoracic outlet syndrome, osteoarthritis, depression, anxiety, chest pain, heart valve dysfunction, lung problems, fatigue, and severe headaches, as well as a short attention span. (Doc. 8-5 at 2-9, Doc. 8-6 at 18). She was 42 years old at the time of her alleged disability. (Doc. 8-2 at 25). After Plaintiff's claims were denied

1

initially and upon reconsideration, (Doc. 8-3 at 2-5, Doc. 8-4 at 4-22), she requested a hearing *de novo* before an Administrative Law Judge.  (Doc. 8-4 at 25-33).  On November 13, 2008, an evidentiary hearing was held by video-conference, at which Plaintiff was represented by counsel.  (Doc. 8-2 at 27-56).  At the hearing, ALJ Geraldine Page heard testimony from Plaintiff and from Thomas Anderson, Ph.D., a vocational expert.

On December 10, 2008, the ALJ entered her decision denying Plaintiff's DIB and SSI applications.  (Doc. 8-2 at 12).  The Appeals Council denied her request for review. (Doc. 8-2 at 2-5).  Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

   ……………………….

3. The claimant has the following severe impairments: dysthymic disorder, somatoform disorder, headaches, symptoms of thoracic outlet syndrome, obesity; osteoarthritis of the knees and degenerative disc disease of the cervical and lumbar spine (20 CFR 404.1521 *et seq.* and 416.971 *et seq.*).

   ………………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 as set forth below (20 CFR 404.1525, 404.1526, 416.925, and 416.926).

   ………………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: lift, carry, push and/pull 10 pounds frequently and 20 pounds occasionally; sit, stand and or walk for 6 hours each in an 8 hour workday; (nonexertional) occasional balancing, stooping, kneeling, crouching, crawling, reaching and climbing of ramps and stairs and no work around hazardous machinery, unprotected heights, vibrating surfaces; loud background noises or ladders ropes or scaffolds.  The claimant's dysthymia and somatoform disorders with chronic pain further limit the claimant nonexertionally to simple, routine, repetitive unskilled tasks with occasional interaction with the general public.

   ………………………..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

   …………………………

7. The claimant was born on February 10, 1964, was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

    ……………………………...

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Doc. 8-2, at 17-26). Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) improperly dismissing the findings of treating physicians; 2) failing to consider the combined impact of Plaintiff's impairments; and 3) inadequately assessing Plaintiff's pain and credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

4

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5 if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. §

5

423(d)(1)(A). In this case, Plaintiff alleges that the three identified errors at the fifth step of the sequential analysis require this court to reverse the Commissioner's decision.

### B. The ALJ's rejection of Treating Physician's Opinions

In her first assignment of error, Plaintiff complains that the ALJ improperly rejected some of the findings and conclusions of two treating physicians: Dr. Bajorek, her neurologist, and Dr. Patil, her primary care physician. 20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added).

#### 1. Dr. Bajorek

Plaintiff testified at the time of the November 13, 2008 hearing that she had not seen Dr. Bajorek, her neurologist, since February of 2007. However, Dr. Bajorek completed a Physical Capacities Evaluation form on Plaintiff's behalf on October 19, 2007. (Doc. 802 at 52). On that form, Dr. Bajorek opined that Plaintiff could sit for four hours in an eight hour work day and stand/walk for 2 hours of an eight hour workday, with a sit/stand option. Plaintiff could use her hands for repetitive motion tasks, and she could use her feet for operating foot controls. Plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently, and she could occasionally climb and crawl. Dr. Bajorek further opined Plaintiff should avoid machinery and exposure to dust, fumes and gases. (Doc. 8-7 at 164-165). However, Dr. Bajorek stated that Plaintiff did not suffer from fatigue for which there was a reasonable medical basis. (*Id.;* Doc. 8-2 at 20).

6

The ALJ accepted many of the findings made by Dr. Bajorek but specifically rejected Dr. Bajorek's assessment of Plaintiff's postural limitations:

> [T]his Administrative Law Judge finds the opinion of Dr. Bajorek limiting the claimant to sedentary work with severe postural limitations is inconsistent with the record as a whole. However, his opinion that she could repetitively grasp, push and pull and perform fine manipulation and repetitive motions, such as writing, typing and assembly, is consistent with the objective medical evidence...All of the claimant's EMG and nerve conduction studies are normal and there is no objective evidence of a loss of muscle strength....

Plaintiff contends that the postural limitations found by Dr. Bajorek were supported by objective evidence, including an MRI and Dr. Bajorek's diagnosis of cervical radiculopathy. (Doc. 8-7 at 29, 31).

Contrary to Plaintiff's argument, objective evidence relied upon by Dr. Bajorek did not reflect a diagnosis of cervical radiculopathy that would support his assessment of severe postural limitations. At a visit on January 10, 2006, Plaintiff complained of low back pain on the right side, on and off since 1999, and of radiation of pain into her leg at times. However, Dr. Bajorek's examination showed normal strength and symmetrical reflexes. Dr. Bajorek recommended that Plaintiff continue physical therapy and referred Plaintiff for work hardening. (Doc. 8-7 at 31). His January 10, 2006 note refers to "*improvement*" of Plaintiff's "cervical radiculopathy *pain*" with medication. (*Id.*)(emphasis added). Nerve studies including NCV and EMG tests performed on Plaintiff's upper extremities on November 23, 2005 by Dr. Bajorek reflect entirely normal results. (*Id.* at 32).

At a December 13, 2005 appointment, Dr. Bajorek concluded that there was no evidence of thoracic outlet syndrome, cervical radiculopathy or entrapment, despite Plaintiff's complaints. (*Id.* at 33-34). In other words, Dr. Bajorek's notes acknowledge

that Plaintiff complained of pain consistent with cervical radiculopathy, but his objective tests ruled out that diagnosis. Thus, the same January 10, 2006 office note that refers to the improvement of Plaintiff's "cervical radiculopathy pain" suggests a "ruled out" diagnosis of cervical radiculopathy by MRI. (Doc. 8-7 at 33)(note reflects no evidence of radiculopathy despite symptoms).

At a May 1, 2006 office visit, Plaintiff reported that had she had "felt ok" until recently, but had experienced pain from her neck to her hips the past four days. Dr. Bajorek's notes reflect a diagnosis of cervical spondylitic disease, with a "relatively stable" cervical strain that would permit Plaintiff to return to work. The May 1, 2006 note also suggests additional "EMG or MRI R/O ["rule out"] radiculopathy." (Doc. 8-7 at 31).

The only other reference by Dr. Bajorek to cervical radiculopathy is in an office note dated August 1, 2006, which reflects a diagnosis of cervical radiculopathy and "cervicalgia" consistent with injury. (Doc. 8-7 at 29). However, at a five-month follow-up visit on January 16, 2007, Dr. Bajorek reported that Plaintiff's cervical spine motion was full, with only slight weakness at C5-6 on the left, and normal reflexes. (Doc. 8-7 at 168). Despite continued reports of "cervical radicular symptoms," additional EMG and nerve conduction studies of the left upper extremity conducted in early 2007 were normal, confirming no evidence of an entrapment or radicular process. (Doc. 8-7 at 144, 174-177).

Plaintiff complained of increased neck pain with activity on February 12, 2007. (Doc. 8-7 at 167). Again, MRIs of the cervical spine showed only mild degenerative disc disease. (Doc. 8-7 at 62-63 (MRI dated 9/27/06), 143, 162-163 (MRI dated 12/15/05)). On June 25, 2007, Plaintiff's gait was hesitant with short steps, but her coordination was

normal. (Doc. 8-7 at 166). Strength was normal (5/5), straight leg raising was negative (normal), sensation was intact, neck and shoulder motion was full, and reflexes were reduced. (*Id.*). Dr. Bajorek noted that the purpose of Plaintiff's visit was for him to complete a functional capacity form, but that Plaintiff had no objective evidence of deficits and "may be able to train for work," with "work hardening still recommended." (*Id.*). On July 2, 2007, bone imaging showed no abnormality. (Doc. 8-7 at 173).

Thus, despite two office notes (January 10, 2006 and August 1, 2006) reflecting a possible diagnosis of cervical radiculopathy, none of Dr. Bajorek's repeated objective tests supported that diagnosis and several notes specifically reflect that Dr. Bajorek had ruled out the possibility of cervical radiculopathy.

A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009). In this case, Plaintiff complains that the ALJ should have accepted all of Dr. Bajorek's functional limitations based on the alleged diagnosis of cervical radiculopathy. As discussed, any such diagnosis made by Dr. Bajorek does not seem to have been of a permanent nature. In any event, both objective tests and repeated examination notes reflecting full range of motion support the ALJ's rejection of Dr. Bajorek's opinion that Plaintiff requires a sit/stand option.

In addition to relying on the short-lived diagnosis of cervical radiculopathy, Plaintiff argues that her MRI testing provides objective support for Dr. Bajorek's postural limitations. It does not. An MRI of the cervical spine taken on December 15, 2005,

showed moderate left neural foraminal stenosis at C2-3, disc bulge and small tear at C4-5 and disc bulge with stenosis at C6-7. (Doc. 8-7 at 162-163). However, Plaintiff's cervical and lumbar spine range of motion was full or only slightly reduced, and her shoulder and knee motion was likewise within normal limits. (*Id.* at 166, 168, 217-218, 225, 258, 260, 272). Her sensation was intact and her reflexes and strength were all normal, except for one examination. (*Id.* at 166, 168, 217-218, 225, 258, 260, 264, 266, 272).

Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

The only portion of Dr. Bajorek's opinion that the ALJ rejected related to his assessment of Plaintiff's limitations. Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's residual functional capacity

10

(RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). In addition, an ALJ may reject a treating physician's opinions, provided that he or she states "good reasons" for doing so, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).

In rejecting the postural limitations assessed by Dr. Bajorek, the ALJ explained that "the opinion of Dr. Bajorek limiting the claimant to sedentary work with severe postural limitations is inconsistent with the record as a whole." (Doc 8-2 at 24). The ALJ went on to point out that "all objective electrodiagnostic testing is negative for carpal tunnel syndrome, radiculopathy, neuropathy and thoracic outlet syndrome. The claimant has not required surgery and has been treated conservatively." (*Id.*). The ALJ's rejection of a portion of Dr. Bajorek's assessment satisfies the "good reasons" requirement. The severe postural limitations found by Dr. Bajorek are not supported by objective medical evidence. Rather, I conclude from a review of the same medical records that substantial evidence supports the ALJ's assessment.

### 2. Dr. Patil

Plaintiff asserts that the ALJ additionally erred in rejecting the opinion of her primary care physician, Dr. Patil, that she was disabled. She alleges that "Dr. Patil diagnosed cervical radiculopathy and thoracic outlet syndrome" which diagnoses the ALJ improperly ignored. In addition, Plaintiff argues that the ALJ failed to consider Dr. Patil's finding on September 4, 2007 that Plaintiff could not reach over her head. (*See* Doc. 8-7 at 153 (correspondence dated September 4, 2007)).

Prior to addressing Plaintiff's arguments, the court notes that the ALJ did not in fact completely reject Dr. Patil's opinions. Although the ALJ did not find objective medical evidence to support a *diagnosis* of thoracic outlet syndrome, the ALJ

11

determined that Plaintiff's severe impairments include" *symptoms of* thoracic outlet syndrome" as well as "osteoarthritis of the knees and degenerative disc disease of the cervical and lumbar spine," which impairments were noted in Dr. Patil's records. (Doc. 8-2 at 17 (emphasis added)).

In a letter written by Dr. Patil in support of Plaintiff's DIB and SSI application, Dr. Patil states that Plaintiff has been diagnosed with "Cervical Disc Disease with Cervical radiculopathy and Thoracic Outlet Syndrome," and opines that Plaintiff has "difficulty handling or holding things, doing work tasks and reaching above her head." (*Id.*). Glaringly absent from Dr. Patil's letter, however, is a reference to any objective medical evidence to support the claimed diagnoses. Plaintiff herself relies only on the December 2005 MRI as providing objective support for Dr. Patil's findings.

As explained above, neither the December 15, 2005 MRI nor any other objective evidence in the record supports the two diagnoses reflected in Dr. Patil's correspondence. Subsequent MRIs revealed only "mild degenerative disc disease," (*see* Doc. 8-7 at 62-63 (MRI dated 9/27/06)), and all other objective tests were negative for cervical radiculopathy and thoracic outlet syndrome. The ALJ pointed out that Dr. Patil's own January 8, 2007 notes reflected that "the claimant had not followed through with an evaluation of her reports of left sided weakness," and "EMG showed no evidence of entrapment or radicular process." (Doc. 8-2 at 19). The ALJ carefully explained that Dr. Patil's diagnoses of cervical disc disease with cervical radiculapathy and thoracic outlet syndrome were "not supported by objective testing" and were "inconsistent with the opinion of [Dr.] Bajorek in this regard." (Doc. 8-2 at 24, Doc. 8-7 at 269). The ALJ's explanation for rejecting Dr. Patil's diagnoses is supported by

12

substantial evidence and satisfies the "good reasons" requirement. Likewise, the rejection of Dr. Patil's opinion that Plaintiff is "totally disabled" was not error because "[u]ltimately...the determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

### C. The Combined Impact of Impairments

Plaintiff argues that because the ALJ did not reference all of her ailments, the ALJ could not have properly considered their combined impact. Specifically, Plaintiff alleges that the ALJ failed to give adequate consideration to her vertigo, chest pains, and anxiety.

While it is clear the ALJ must consider the combined effect of Plaintiff's impairments in assessing her eligibility for disability benefits, *see Barney v. Secretary of Health and Human Services*, 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing the ALJ did so in this case. The ALJ found Plaintiff suffered from multiple impairments and analyzed each of Plaintiff's impairments after carefully considering the entire record. (Doc. 8-2 at 18-22). The ALJ's finding that Plaintiff's combination of impairments did not meet or equal the Listings (*id.* at 18) is sufficient to show that the ALJ had considered the effect of the combination of impairments. *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir.1990)(per curiam)(ALJ's specific reference to the claimant's "combination of impairments" satisfied duty to consider the combined impact of impairments); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)(per curiam)(same).

13

Plaintiff testified that she had begun to experience vertigo shortly before the November 2008 hearing. However, Plaintiff provided no objective medical evidence to support her new diagnosis. Her testimony was that the initial bout lasted "about five to seven days" but that otherwise she needed to take medicine "about once every two weeks" for periodic attacks that lasted three to five days. (Doc. 8-2 at 39-40). Plaintiff's testimony of a recent and sporadic onset of vertigo, unsupported by any medical evidence in the record, is not sufficient to support her claim of disability.

Similarly, although Plaintiff refers to a diagnosis of panic disorder by her psychiatrist, Dr. Saroch, the record does not support Plaintiff's claim that Dr. Saroch diagnosed her with that condition. (Doc. 8-7 at 106, 186). Rather, Dr. Saroch's notes reflect only mild anxiety symptoms. (Doc. 8-7 at 249-254). The ALJ specifically considered Plaintiff's mental impairments, as well as all of Plaintiff's physical and mental impairments in combination in formulating Plaintiff's RFC. (Doc. 8-2 at 21-22).

Plaintiff describes her chest pains as serious, given evidence that she had presented at the emergency room "on several occasions over the years for her chest pains." Despite Plaintiff's complaints, objective medical evidence repeatedly ruled out any cardiac involvement, (*see* Doc. 8-7 at 7-8, 54), and confirmed that Plaintiff's chest was clear. (Doc. 8-7 at 75, 258). The ALJ specifically considered Plaintiff's complaints of chest pain and the lack of cardiac basis for that pain. (Doc. 8-2 at 18-19). Plaintiff suggests that she "should have been provided a limitation with regard to her ability to function under stress and to lift and/or carry more than just a few pounds due to her chest pains." However, Plaintiff points to no evidence that the chest pains she experienced sporadically over the years had any impact on her ability to lift or carry

14

weight, and no physician, including Dr. Bajorek, imposed such severe limitations on Plaintiff's ability to lift or carry.

### D. Credibility Assessment and Evaluation of Pain

Plaintiff's third statement of error finds fault with the ALJ's conclusion that her testimony was not entirely credible. Specifically, Plaintiff claims that the ALJ failed to consider all the factors listed in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.

With respect to her complaints of neck, back and shoulder back pain, Plaintiff alleges that the ALJ failed to adequately consider Dr. Bajorek's diagnosis of cervical radiculopathy, and Dr. Patil's diagnosis of cervical myelopathy and thoracic outlet syndrome (Doc. 8-7 at 72, 94). She argues that the medical records reflect several diagnoses that would be expected to produce significant pain. The same diagnoses support her claims of difficulty in holding objects and her testimony concerning numbness in her hands, as well as her testimony that she could not lift more than five pounds. In addition, Plaintiff contends that the thoracic outlet syndrome diagnosis supports her report of being unable to lift her arm over her head, her reported shoulder pain, and her stated difficulty with combing her hair and holding objects.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," (Doc. 8-2 at 24), and that Plaintiff "has a mild restriction in activities of daily living" based on her complaints of pain. (Doc. 8-2 at 22). In assessing Plaintiff's RFC, the ALJ determined that Plaintiff's mental impairments together with her "chronic pain ...limit the claimant nonexertionally to simple, routine, repetitive unskilled tasks...." (Doc. 8-2 at 23). However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence, and limiting

effects of [her] symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity." (Doc. 8-2 at 24).

Objective tests including EMG and nerve conduction studies of Plaintiff's upper extremities showed completely normal results. There was no evidence of entrapment or radicular process, no evidence of right carpal tunnel syndrome, no evidence of right ulnar nerve entrapment around the elbow, and no evidence of right cervical radiculopathy or thoracic outlet syndrome. (Doc. 8-7 at 144, 174, 176-179, 269). Plaintiff's cervical MRI revealed degenerative disc disease but without significant stenosis, and only mild canal stenosis at C5-6. (*Id.* at 258, Doc. 8-8 at 10). The ALJ specifically recognized that:

> The record shows that all objective electrodiagnostic testing is negative for carpal tunnel syndrome, radiculopathy, neuropathy and thoracic outlet syndrome. The claimant has not required surgery and has been treated conservatively. MRI and CT scans of the brain are normal as well. The claimant ambulates independently and her gait and strength are described as normal.

(Doc. 8-2 at 24). Because the ALJ found inconsistencies between the objective medical evidence and plaintiff's testimony about the extent of her pain and limitations, it was permissible for the ALJ to discredit plaintiff's testimony about the severity of her symptoms.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's

16

findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Substantial evidence supports the ALJ's finding that Plaintiff's claimed limitations conflict with the medical evidence in the record. Because the severity of Plaintiff's reported level of pain was not supported by any medical evidence, it was proper for the ALJ to discount the credibility of her account. Although the ALJ did not provide detailed reasons for discounting plaintiff's credibility, any error is harmless in this case. *See Spicer v. Apfel*, 15 Fed. App'x 227, 234 (6th Cir. July 16, 2001) (finding harmless error where the ALJ did not provide detailed reasons for his credibility assessment because the ALJ had considered the claimant's subjective complaints but ultimately gave more weight to the objective medical evidence). As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports the ALJ's decision to discredit plaintiff's statements about the severity of her symptoms.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                              */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CYNTHIA MCDONALD,                                Case No. 1:09-cv-860

       Plaintiff,                                        Weber, J.
                                                         Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).